POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY CHIPMAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FAT BRANDS INC., ANDREW WIEDERHORN, RON ROE, REBECCA HERSHINGER, and KEN KUICK,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Kerry Chipman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents,

- 1 -

announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding FAT Brands Inc. ("FAT Brands" or the "Company"), and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded FAT Brands securities between December 4, 2017 and February 18, 2022, inclusive (the "Class Period").  Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

subsequent damages took place in this judicial district.  Further, the Company maintains its principal executive offices in Los Angeles County.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant FAT Brands purports to be a franchising company which acquires, develops, and markets quick-service, fast casual, and casual dining restaurant concepts including the brands of: Fatburger, Johnny Rockets, Twin Peaks, Fazoli's, Buffalo's Cafe, Buffalo's Express, Ponderosa Steakhouse, Bonanza Steakhouse, Hurricane Grill & Wings, Yalla Mediterranean, and Elevation Burger.

8.     Defendant FAT Brands is a Delaware corporation with its principal executive offices at 9720 Wilshire Blvd., Suite 500, Beverly Hills, California 90212.  FAT Brands' Class A common stock trades on the NASDAQ exchange under the ticker symbol "FAT," its Class B common stock trades under the ticker symbol "FATBB," its Series B

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

Cumulative Preferred Stock trades under the ticker symbol "FATBP," and it warrants trade under the ticker symbol "FATBW."

9.       Defendant Andrew Wiederhorn ("Wiederhorn") has served as the Chief Executive Officer, President, and a director of the Company throughout the Class Period.

10.      Defendant Ron Roe ("Roe") served as the Chief Financial Officer ("CFO") of the Company from 2009 through August 2018.  Defendant Roe is currently the Senior Vice President of Finance of the Company.

11.      Defendant Rebecca Hershinger ("Hershinger") served as the CFO of the Company from August 2018 through May 2021.

12.      Defendant Ken Kuick ("Kuick") has served as the CFO of the Company since May 2021.

13.      Defendants Wiederhorn, Roe, Hershinger, and Kuick are sometimes referred to herein as the "Individual Defendants."

14.      The Individual Defendants:

(a)      directly participated in the management of the Company;

(b)      were directly involved in the day-to-day operations of the Company at the highest levels;

(c)      were privy to confidential proprietary information concerning the Company and its business and operations;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(d)     were directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     were directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     were aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

15.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18.     On December 4, 2017, FAT Brands filed with the SEC its quarterly report on Form 10-Q for the period ended September 24, 2017 (the "3Q17 Report") which was signed by Defendants Wiederhorn and Roe.   Attached to the 3Q17 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Wiederhorn and Roe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

19.     The 3Q17 Report neglected to state Defendant Wiederhorn and/or his son and current FAT Brands Chief Operating Officer ("COO"), Thayer Wiederhorn, had engaged in transactions "for no legitimate corporate purpose" connected to the Company but stated the following, in pertinent part, regarding the debt, loans, and financing concerning Defendant Wiederhorn:

> … On June 21, 2017, the debt was purchased by a limited partnership in which Andrew Wiederhorn, the CEO of the Company, is a general partner. Fog Cutter Capital Group Inc. has agreed to indemnify FAT Brands Inc. and Subsidiaries from costs and liabilities which may arise from this matter.

20.     The 3Q17 Report stated the following, in pertinent part, regarding the Company's executive management:

**We depend on key executive management.**

- 6 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

***We depend on the leadership and experience of our relatively small number of key executive management personnel, and in particular key executive management, particularly our Chief Executive Officer, Andrew Wiederhorn.*** The loss of the services of any of our executive management members could have a material adverse effect on our business and prospects, as we may not be able to find suitable individuals to replace such personnel on a timely basis or without incurring increased costs, or at all. We do not maintain key man life insurance policies on any of our executive officers. We believe that our future success will depend on our continued ability to attract and retain highly skilled and qualified personnel. There is a high level of competition for experienced, successful personnel in our industry. Our inability to meet our executive staffing requirements in the future could impair our growth and harm our business.

(Emphasis added.)

21.     On April 2, 2018, FAT Brands filed with the SEC its annual report on Form 10-K for the period ended December 31, 2017 (the "2017 Annual Report") which was signed by Defendant Wiederhorn.  Attached to the 2017 Annual Report were certifications pursuant to SOX signed by Defendants Wiederhorn and Roe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

22.     The 2017 Annual Report neglected to state Defendant Wiederhorn and/or Thayer Wiederhorn had engaged in transactions "for no legitimate corporate purpose" connected to the Company but provided other information regarding debt, loans, and financing.

23.     The 2017 Annual Report stated the following, in pertinent part, regarding the Company's executive management:

- 7 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

**We depend on key executive management.**

*We depend on the leadership and experience of our relatively small number of key executive management personnel, and in particular key executive management, particularly our Chief Executive Officer, Andrew Wiederhorn. The loss of the services of any of our executive management members could have a material adverse effect on our business and prospects*, as we may not be able to find suitable individuals to replace such personnel on a timely basis or without incurring increased costs, or at all. We do not maintain key man life insurance policies on any of our executive officers. We believe that our future success will depend on our continued ability to attract and retain highly skilled and qualified personnel. There is a high level of competition for experienced, successful personnel in our industry. Our inability to meet our executive staffing requirements in the future could impair our growth and harm our business.

(Emphasis added.)

24.    On March 29, 2019, FAT Brands filed with the SEC its annual report on Form 10-K for the period ended December 30, 2018 (the "2018 Annual Report") which was signed by Defendant Wiederhorn.  Attached to the 2018 Annual Report were certifications pursuant to SOX signed by Defendants Wiederhorn and Hershinger attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25.    The 2018 Annual Report neglected to state Defendant Wiederhorn and/or Thayer Wiederhorn had engaged in transactions "for no legitimate corporate purpose" connected to the Company but provided other information regarding debt, loans, and financing.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

26. The 2018 Annual Report stated the following, in pertinent part, touting the Company's executive management:

**Competitive Strengths**

We believe that our competitive strengths include:

… *Seasoned and Passionate Management Team.* **Our management team and employees are critical to our success. Our senior leadership team has more than 200 years of combined experience in the restaurant industry, and many have been a part of our team since the acquisition of the Fatburger brand in 2003.** We believe that our management team has the track record and vision to leverage the FAT Brands platform to achieve significant future growth. In addition, through their holdings in FCCG, our senior executives own a significant equity interest in the company, ensuring long-term commitment and alignment with our public shareholders. **Our management team is complemented by an accomplished Board of Directors.**

\*      \*      \*

**We depend on key executive management.**

**We depend on the leadership and experience of our relatively small number of key executive management personnel, and in particular key executive management, particularly our Chief Executive Officer, Andrew Wiederhorn. The loss of the services of any of our executive management members could have a material adverse effect on our business and prospects**, as we may not be able to find suitable individuals to replace such personnel on a timely basis or without incurring increased costs, or at all. We do not maintain key man life insurance policies on any of our executive officers. We believe that our future success will depend on our continued ability to attract and retain highly skilled and qualified personnel. There is a high level of competition for experienced, successful personnel in our industry. Our inability to meet our executive staffing requirements in the future could impair our growth and harm our business.

(Emphasis added.)

- 9 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

27.     On April 28, 2020, FAT Brands filed with the SEC its annual report on Form 10-K for the period ended December 29, 2019 (the "2019 Annual Report") which was signed by Defendant Wiederhorn.  Attached to the 2019 Annual Report were certifications pursuant to SOX signed by Defendants Wiederhorn and Hershinger attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

28.     The 2019 Annual Report neglected to state Defendant Wiederhorn and/or Thayer Wiederhorn had engaged in transactions "for no legitimate corporate purpose" connected to the Company but provided other information regarding debt, loans, and financing.

29.     The 2019 Annual Report stated the following, in pertinent part, touting the Company's executive management:

**Competitive Strengths**

We believe that our competitive strengths include:

… *Seasoned and Passionate Management Team.* ***Our management team and employees are critical to our success. Our senior leadership team has more than 200 years of combined experience in the restaurant industry, and many have been a part of our team since the acquisition of the Fatburger brand in 2003.*** We believe that our management team has the track record and vision to leverage the FAT Brands platform to achieve significant future growth. In addition, through their holdings in FCCG, our senior executives own a significant equity interest in the company, ensuring long-term commitment and alignment with our public shareholders. ***Our management team is complemented by an accomplished Board of Directors.***

(Emphasis added.)

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

30.     On May 15, 2020, FAT Brands filed with the SEC an amendment to its 2019 Annual Report Form 10-K/A for the period ended December 29, 2019 (the "2019 Amendment") which was signed by Defendant Wiederhorn.  Attached to the 2019 Amendment were certifications pursuant to SOX signed by Defendants Wiederhorn and Hershinger attesting to its accuracy and the disclosure of all fraud.

31.     On March 29, 2021, FAT Brands filed with the SEC its annual report on Form 10-K for the period ended December 27, 2020 (the "2020 Annual Report") which was signed by Defendant Wiederhorn.  Attached to the 2020 Annual Report were certifications pursuant to SOX signed by Defendants Wiederhorn and Hershinger attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

32.     The 2020 Annual Report neglected to state Defendant Wiederhorn and/or Thayer Wiederhorn had engaged in transactions "for no legitimate corporate purpose" connected to the Company but provided other information regarding debt, loans, and financing.

33.     The 2020 Annual Report stated the following, in pertinent part, touting the Company's executive management:

**Competitive Strengths**

We believe that our competitive strengths include:
… *Seasoned and Passionate Management Team.* ***Our management team and employees are critical to our success. Our senior leadership team is highly experienced in the restaurant industry, and many have been a part of our***

***team since our acquisition of the Fatburger brand in 2003***. In addition, through their holdings, our senior executives own a significant equity interest in the Company, ensuring long-term commitment and alignment with our public shareholders. ***Our management team is complemented by an accomplished Board of Directors that is highly involved in overseeing our strategic initiatives and implementation.***

\*       \*       \*

**We depend on key executive management.**

***We depend on the leadership and experience of our relatively small number of key executive management personnel, in particular our Chief Executive Officer, Andrew Wiederhorn. The loss of the services of any of our executive management members could have a material adverse effect on our business and prospects***, as we may not be able to find suitable individuals to replace such personnel on a timely basis or without incurring increased costs, or at all. We do not maintain key man life insurance policies on any of our executive officers. We believe that our future success will depend on our continued ability to attract and retain highly skilled and qualified personnel. There is a high level of competition for experienced, successful personnel in our industry. Our inability to meet our executive staffing requirements in the future could impair our growth and harm our business.

(Emphasis added.)

34.    On January 10, 2022, the Company filed with the SEC a current report on Form 8-K which was signed by Defendant Kuick which attached an investor presentation (the "Investor Presentation").    The Investor Presentation touted the Company's management, including Defendants Andrew Wiederhorn and Thayer Wiederhorn, in the following slides:

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS



35.     The statements referenced in ¶¶ 18-34 above, made by or attributed to Defendants, were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business,

operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company and the Wiederhorns engaged in transactions "for no legitimate corporate purpose"; (2) the Company ignored warning signs relating to transactions with the Wiederhorns; (3) as a result, the Company was likely to face increased scrutiny, investigations, and other potential issues; (4) certain executives, who are touted as critical to the Company's success, were at great risk of scrutiny— potentially, at least in part, due to the Company's actions; (5) the Company's touted CEO and COO were under investigation regarding transactions with the Company; and (6) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

### **The Truth Emerges**

36. On Saturday February 19, 2022, the Los Angeles Times published an article entitled "Family behind Fatburger under investigation for alleged fraud, money laundering, records show" which revealed the investigations into Defendant Wiederhorn and his son and Company COO Thayer Wiederhorn in connection with the Company.

37. The Los Angeles Times article stated the following, in pertinent part, regarding the investigation:

> ***Federal authorities have been investigating Andrew Wiederhorn, chief executive of the company that owns the Fatburger and Johnny Rockets restaurant chains, and examining one of his family member's actions as***

- 14 -

*part of an inquiry into allegations of securities and wire fraud, money laundering and attempted tax evasion, court records show.*

*During the probe, federal agents in December raided the Beverly Grove home of Wiederhorn's son Thayer and daughter-in-law Brooke Wiederhorn, according to search warrant records filed in court.*

\*     \*     \*

Agents hauled away phones, digital storage devices, tax documents and other records from the couple's residence, according to court filings.

*Federal investigators also sought a judge's permission to search the elder Wiederhorn's Beverly Hills mansion, although court filings do not indicate whether that raid took place.* They also monitored him walking his dogs by the property last year.

*In a November affidavit outlining the investigation, a special agent for the FBI focusing on complex financial crimes alleged that Wiederhorn, 56, had "devised and executed a fraudulent scheme" to avoid paying taxes and received "millions of dollars in sham loans" through his companies.*

The affidavit identifies years of credit card purchases by Wiederhorn, his children, and other relatives — $183,500 at a London jeweler; $150,000 apparently for a down payment on a Rolls-Royce; more than $100,000 to a Beverly Hills divorce attorney — and *alleges they were "paid primarily" out of accounts held by an affiliate of the publicly traded FAT Brands*.

The filing also alleges that Wiederhorn generated millions of American Express rewards points by routing company money through his son's PayPal account.

*The agent concluded there was probable cause that Wiederhorn "engaged in the following criminal conduct," including tax offenses, misrepresentations to investors, and fraud offenses "relating to personal expenses that Wiederhorn caused FAT ... to pay."*

The status of the investigation is unclear. No charges have been filed against any person or against FAT Brands, of which Wiederhorn is the largest shareholder.

- 15 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

\*      \*      \*

***Beverly Hills-based FAT Brands said late Friday: "The government has informed FAT Brands of its investigation and the Company is fully cooperating."***

The inquiry comes nearly two decades after Wiederhorn was first ensnared in financial crimes. In 2004, he pleaded guilty in U.S. District Court in Oregon to charges of paying an illegal gratuity to an associate and to filing a false tax return. He spent 15 months in federal prison in Sheridan, Ore., and paid a $2-million fine.

The day before he pleaded guilty, the company he led, Fog Cutter Capital, awarded him a $2-million bonus and agreed to keep paying him during his incarceration.

The arrangement prompted New York Times columnist Nicholas Kristof to bestow on Wiederhorn his inaugural "award for greed," writing: "I can't think of a board that has ever so disgraced the principles of corporate governance by overpaying a CEO even as he sits in prison."

\*      \*      \*

It is unclear what prompted the recent investigation by the FBI, whose agents appear to have pored over Wiederhorn's banking, loan and tax records.

Part of the inquiry outlined in the affidavit examined whether Wiederhorn filed a false tax return, citing discrepancies between loan applications. His 2018 tax return listed income of $403,311 and, in 2017, income of $395,508, according to the court filing.

But in applications for a car loan and home purchase in 2018, he reported earning $200,000 per month, or about $2.4 million per year.

The affidavit makes ample references to Wiederhorn's "luxurious lifestyle" — a $24,739 bill at Hotel Byblos in Saint-Tropez and $29,913 at Hotel Arts Barcelona — while the Internal Revenue Service has clamored for unpaid income taxes over the last decade.

- 16 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Wiederhorn has entered into several "installment agreements" to pay back taxes. The filing notes he was complying with his current installment plan, but as of November 2021, he owed nearly $3 million in personal income taxes, penalties and interest.

The FBI agent also outlined how he believes Wiederhorn "converted" money from FAT Brands and its affiliates via credit cards that show purchases at Dolce & Gabbana, Giorgio Armani and Restoration Hardware.

One of Wiederhorn's cards had subaccounts for credit cards issued to his six children, his mother, personal household employees, his ex-wife and others. Their charges include "significant expenses, which appear to be personal in nature," such as doctor bills, clothing, shoes, mattresses, groceries, tutoring services and pet care.

***From October 2017 — the date of FAT Brands' initial public offering — to May 2019, about $5 million from the company or its subsidiaries went to cover various Wiederhorn credit card balances, according to the court filing.***

Thayer Wiederhorn, an executive at FAT Brands, is referenced specifically in connection with an alleged scheme to route millions of dollars of company money through American Express charges to a PayPal account bearing his name. The FBI agent suggests the apparent goal was to generate credit card rewards points for his father.

***The court records describe the scheme as "round-trip transactions," with money traveling from the younger Wiederhorn's PayPal account, to his personal Bank of America accounts, and back to FAT or its subsidiaries.***

***The FBI agent tabulated a cost more than $250,000 in fees to PayPal out of about $9 million that traveled "round trip."***

***Those $250,000 in fees were spent "for no legitimate corporate purpose," the FBI agent wrote, but "to further Wiederhorn's fraudulent scheme."***

(Emphasis added.)

- 17 -

38.     On February 22, 2022[1], before trading hours, the Company filed with the SEC a Form 8-K, in which the Company announced the following, in relevant part, regarding the investigation:

> *… the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission informed the Company in December 2021 that they have opened investigations relating to the Company and our Chief Executive Officer, Andrew Wiederhorn, and are formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between these entities and Mr. Wiederhorn, and compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family.* The Company is cooperating with the government regarding these matters, and we believe that the Company is not currently a target of the U.S. Attorney's investigation. At this early stage, the Company is not able to reasonably estimate the outcome or duration of the government investigations.

(Emphasis added.)

39.     On this news, FAT Brands' class A common stock price fell $2.42 per share, or 23%, to close at $8.14 per share on February 22, 2022, on unusually heavy trading volume, damaging investors.

40.     On this news, FAT Brands' class B common stock price fell $1.83 per share, or 17%, to close at $8.89 per share on February 22, 2022, on unusually heavy trading volume, damaging investors.

---

[1] On February 21, 2022, the market was closed in observance of President's Day.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

41.     On this news, FAT Brands' preferred stock price fell $5.36 per share, or 30%, to close at $12.37 per share on February 22, 2022, on unusually heavy trading volume, damaging investors.

42.     On this news FAT Brands' warrants' price fell $2.41, or 35%, to close at $4.47 per warrant on February 22, 2022, on unusually heavy trading volume, damaging investors.

43.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of FAT Brands during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, the Company's securities were actively

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities are traded in efficient markets;

(d)    the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)    the Company traded on NASDAQ, and was covered by multiple analysts;

(f)    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)    Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

51.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in Affiliated *Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5

### Against All Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not

misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

57.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.  These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

58.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

59.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period.  In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

60.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

61.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

62.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## COUNT II

### Violation of Section 20(a) of The Exchange Act

### Against The Individual Defendants

63.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

65.     As officers of the Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company and to correct promptly any public statements issued by the Company which had become materially false or misleading.

66.     Because of their positions of control and authority as senior officers, Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period.  Throughout the Class Period, Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.   The Individual Defendants therefore, were "controlling persons" of the

- 26 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

67.     The Individual Defendants, therefore, acted as controlling persons of the Company. By reason of their senior management positions, the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. The Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 15, 2022                          Respectfully submitted,

                                                POMERANTZ LLP

                                                */s/ Jennifer Pafiti*
                                                Jennifer Pafiti (SBN 282790)
                                                1100 Glendon Avenue, 15th Floor
                                                Los Angeles, California 90024
                                                Telephone: (310) 405-7190
                                                jpafiti@pomlaw.com

                                                BRONSTEIN, GEWIRTZ &
                                                GROSSMAN, LLC
                                                Peretz Bronstein
                                                (*pro hac vice* application forthcoming)
                                                60 East 42nd Street, Suite 4600
                                                New York, New York 10165
                                                Telephone: (212) 697-6484
                                                Facsimile: (212) 697-7296
                                                peretz@bgandg.com

                                                *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS